33 So.2d 898

### STACEY v. STACEY.
I Div. 292.

Supreme Court of Alabama.
Dec. 18, 1947.

Rehearing Denied Feb. 19, 1948.

J. M. Coxwell, of Monroeville, and Wm..
Hamilton and Powell & Hamilton, all of
Greenville, for appellant.

C. L. Hybart and R. L. Jones, both of Monroeville, for appellee.

GARDNER, Chief Justice.

The appeal is from a final decree ordering the sale of a tract of land consisting of 1020 acres for division among the joint owners, and in recognition of complainant's right to specific performance for the sale of timber on the land measuring, as to the pine timber 12 inches and up 6 inches from the ground, and as to the hardwood timber 14 inches and up 6 inches from the ground, all as of date March 12, 1942; also, ordering a reference to the Register for the ascertainment of the amount and value of the timber of said specified dimensions as of date March 12, 1942, still standing on the land, as well also to ascertain what, if any, timber was cut by complainant which was less than the specified dimension.

The Register was also directed to report a reasonable attorney's fee for complainant, to find the balance due on the purchase price of the timber by complainant to defendant, and for the timber purpose above stated the Register was authorized to employ skilled and experienced timber men, with their compensation to be charged as part of the costs of the cause.

Complainant and defendant are brothers, the former a dentist and the latter a practicing physician.

Though the record is somewhat voluminous, yet there is little that need be said in discussion of the case. As we view it, it is largely a question of fact.

Defendant insisted that this 1020 acres could be divided in kind and that a sale for division was not necessary. It appears that only 60 acres of this large tract are in cultivation. Of the remainder, in some portions there is valuable timber, and in others timber that is not so valuable; that some of the lands were broken, some level, some hills, and, indeed, the evidence is convincing that an equitable division could not be had without a sale. This view is sustained by the great weight of the testimony and we entertain the view there could be no question as to the correctness of the decree in this respect.

This leaves for consideration only one other disputed issue, that is, the right of complainant for specific performance of the contract admittedly entered into between these two brothers for a sale of the timber by the defendant to the complainant for the gross sum of fifteen thousand dollars, which contract it appears was made about March 12, 1942. Complainant admittedly was placed in possession of the timber by the defendant and proceeded to cut a large portion of the timber which came within the dimensions of the contract. Complainant in April, 1942, execut-

ed a mortgage and a number of notes for the purchase price of the timber, and before this bill was filed had paid the sum of thirteen thousand dollars, leaving a balance of two thousand dollars due. The balance he states he is able and willing and ready to pay, and under the decree of the court the two thousand dollars with interest thereon at 6% is to be deducted from his share of the proceeds of the sale of the property. It is insisted for complainant that quite an amount of timber remains on the place, which belongs to him. The defendant insists that practically all the timber of any value has been cut. But, of course, if complainant is entitled to a decree of specific performance, he is entitled to whatever timber remains upon the land which was of the dimensions specified in the contract at the time it was made on March 12, 1942, that is, 12 inches for the pine and 14 inches for the hardwood, measured 6 inches above the ground, whether the amount thereof be great or small. That the contract of sale has met the statute of frauds, Code 1940, Tit. 20, § 3, does not appear to be questioned. Miller v. Smith, 202 Ala. 449, 80 So. 833; Heflin v. Bingham, 56 Ala. 566, 28 Am.Rep. 776; Goodlett v. Hansell, 66 Ala. 151.

In West v. McKay, 225 Ala. 397, 143 So. 573, this court, in discussing the question of specific performance of an oral contract as to the sale of lands owned by tenants in common, recognized the rule that ordinarily the question of possession is insufficient to meet the requirements of the statute of frauds for the reason that possession is referable to the previous status and right and likewise because the possession cannot in strictness be regarded as exclusive. To that effect the text in 58 C.J. 1010 was cited, as well as the case of Jones v. Jones, 219 Ala. 62, 121 So. 78, with other of our authorities, some of which were recently reviewed in Knight v. Smith, Ala.Sup., 33 So.2d 242.[1] The same text, however, makes note of the holding to the effect that where actual possession is taken by one cotenant to the exclusion of the other and the consideration, or a large part of the consideration, is paid, such acts are together to be regard-

ed as sufficient to meet the requirements of the statute of frauds.

The instant case comes well within this exception to the general rule. The bill in paragraph 3, after a statement of the terms of the contract of sale of the timber and the payment by the complainant of seven thousand dollars with the agreement that he was to pay the balance due upon the timber in monthly installments of two thousand dollars per month, concludes as follows:

"Your Orator further shows unto your Honor that at the time of said sale to him of the ½ interest in the timber owned by the defendant, he, the said defendant, placed him in possession of said timber and gave your Orator the following instructions in writing:

"'July 27, 1942.

"'Received of Jas. H. Stacey Two Thousand ($2,000.00) Making a total of Seven Thousand ($7,000.00). Balance due Eight Thousand (8000.00) with interest, and (2000.00) per month until paid. When paid in full a deed to be given Jas. H. Stacey on timber rights 12 in. pine 14 in. hardwood. No post material to be cut.

"'This paper is a receipt and conveys no title.

"'A. G. Stacey

"'Attest:

"'H. L. Stacey.'"

The respondent in his answer alleges as follows:

"Third. Respondent, in answer to the third paragraph of the bill of complaint admits the allegations of the said paragraph and further shows unto your Honor that said complainant was to have and it was agreed that he was to cut and remove said timber within two years from, to-wit: July 27, 1942. Respondent denies that H. L. Stacey attested the instrument set forth in said paragraph."

Complainant in his testimony answered in the affirmative the questions as to whether or not the defendant put him in possession of the timber, and that he went to cutting the timber as agreed. The proof further shows that the complainant had some

[1] Ante, p. 113.

seventeen hands with machinery upon the land removing the timber.

These two brothers bought this property evidently as a matter of investment, the purchase being made at a Register's sale, and almost immediately thereafter the trade was made selling the timber to this complainant. So far as actual possession was concerned, neither of the joint owners was in the actual possession at the time of this transaction. Indeed, at the time of the conversation in regard to the trade it is doubtful that the deed from the Register had been received. Defendant admitted that complainant went into possession of this timber, that is, went to cutting it with his knowledge and consent. And as observed by the court in Miller v. Smith, supra, defendant delivered exclusive possession of this timber to complainant "in the only way it could be delivered." [202 Ala. 449, 80 So. 834] As we have indicated, the pleadings show that this question of being placed in possession was not an issue in the case. It was an admitted fact. We have merely pointed out that it was not only admitted by the pleadings but well established and, indeed, admitted by the proof. Under the circumstances here disclosed, therefore, it is clear enough that there was such exclusive possession as suffices to meet the requirements of the statute of frauds.

Though this matter appears not to have consideration in brief of counsel we have thought it appropriate to make these observations in view of our own case of West v. McKay, supra, and to make note as well also of the decision of the Court of Appeals in Barclift v. Peinhardt, 18 Ala.App. 340, 92 So. 208, touching this question.

Some of the argument of counsel for defendant appears to assume that the decree of the court calls for an estimate of the timber remaining at the time of the cutting. But the Chancellor was careful to specify that the Register was to estimate on the reference the amount and value of timber, if any, remaining on the lands of the specified dimensions as of March 12, 1942. There is, therefore, no difficulty in that respect.

█ There is some argument, also, upon the question of claim for damages on account of disturbance of complainant's employees. True, there was testimony tending to show that defendant did interfere with complainant's employees on more than one occasion and placed signs warning against cutting timber. But the decree made no finding against the defendant in that regard, and, therefore, no such question is here presented.

The most serious contention on this appeal appears to relate to the time within which complainant was required under the contract to remove the timber. It is without dispute that complainant has paid thirteen thousand dollars of the purchase money and offered to pay the balance of two thousand dollars upon the execution by the defendant of a deed conveying the timber as specified, and that he made these offers. upon numerous occasions, which were promptly refused by the defendant. Defendant now insists that the period for cutting the timber was two years, and that the time for cutting expired in March, 1944, while the complainant's testimony is to the effect that under the contract he was allowed five years to remove the timber. The bill was filed in May, 1944. In this connection we have not overlooked the argument of counsel for the respective parties as to whether or not our statute, Title 47, §§ 46–49, Code 1940, has application. But our conclusion upon the matter of proof renders a consideration of this argued question unnecessary and a decision thereon is therefore left to one side.

██ We are convinced from our study of the record that complainant has the better of the argument as to the time limit within which under the verbal contract, he was to remove the timber. Aside from the conflicting testimony of the complainant and the defendant upon this question, the only other testimony is from witnesses who heard one or the other of the parties state something in regard to the time. True, there were a few more witnesses testifying for the defendant in this respect than for the complainant. But the truth is not always obtained from the number of witnesses alone. As has been often said: "courts do not merely count witnesses in determining any given question, but must be guided by the conviction produced upon

the judicial mind by the witnesses examined," or as otherwise expressed: "witnesses are weighed not numbered." Timmerman v. Martin, 234 Ala. 622, 176 So. 198, 200.

In July, 1942, defendant refused to execute this deed and we think a careful study of his evidence will disclose that his refusal was not rested upon this question of time limit contained in the deed, but rather upon his dissatisfaction with the trade, which had proven profitable to complainant. Indeed, it is clear enough that complainant, had he been pressed to it, could have cut and removed all the timber of the specified dimensions within a period of 2 years, had such been the requirement of the contract.

We think, therefore, that the complainant has from his proof made out his case for relief for specific performance for this timber and that the decree in this respect is free from error.

■ Counsel for defendant insists that there has been no formal tender, citing Bass v. Gilliland's Heirs, 5 Ala. 761; Coley v. English, 209 Ala. 688, 96 So. 909. It must be borne in mind that we have here no question of pleading, but that as to the proof it is abundantly established that complainant had been willing and anxious to pay the remaining two thousand dollars on the purchase price upon the execution of a deed by the defendant for the timber. And it must be borne in mind also that we are here concerned with an actual purchase and sale and not with a mere option, a question discussed in Coley v. English, supra. It also appears clear enough from this record that the defendant has repudiated the contract. Of course, complainant has offered in his bill, and his proof shows a willingness, to pay the balance found due. Under the circumstances as disclosed by this record, we are of the opinion that complainant has shown a case for specific performance. Taylor v. Newton, 152 Ala. 459, 44 So. 583; Campbell v. Lombardo, 153 Ala. 489, 44 So. 862; Irvin v. Irvin, 207. Ala. 493, 93 So. 517; Jenkins v. Harrison, 66 Ala. 345; Rice v. Rice, 199 Ala. 672, 75 So. 21.

The cases for complainant that the terms of the contract must be definitely alleged and established as alleged by clear and satisfactory proof have been examined. Among them: Roquemore & Hall v. Mitchell Bros., 167 Ala. 475, 52 So. 423, 140 Am. St.Rep. 52; Adams v. Powell, 205 Ala. 91, 87 So. 346; Box v. Box, 243 Ala. 437, 10 So.2d 478; Pepper v. Horn, 197 Ala. 395, 73 So. 46; Grooms v. Brown-Marx Co., 239 Ala. 284, 195 So. 215. But we do not consider that anything said in these authorities runs counter to the conclusion that we have reached, that under the facts and circumstances of this case the test has been met and that specific performance was due to the complainant. To our minds the contract was clear and its terms were not left in doubt. It was proven as alleged by clear and satisfactory evidence. As we have previously noted, the only real question of sharp dispute concerns the time limit for the removal of the timber, which we think, upon the evidence, was properly decided in the complainant's favor. But we forego further discussion.

We are of the opinion that the decree of the court below is correct, and is due to be affirmed. It is so ordered.

Affirmed.

FOSTER, LAWSON, and STAKELY, JJ., concur.

### On Rehearing.

GARDNER, Chief Justice.

Upon this application counsel for appellant stress the point that in the opinion rendered this court approved the finding that the complainant had a period of five years under the contract within which to remove the timber, and that this time would expire March 12, 1947, some two days before the final decree was rendered in the court below, on March 14, 1947, and that respondent in no manner interfered with complainant in his milling operations during this period. We are cited to Heflin v. Bingham, 56 Ala. 566, 28 Am.Rep. 776, and Gibbs v. Wright, 5 Ala.App. 486, 57 So. 258, to sustain the argument that the complainant had lost his right to the timber by reason of expiration of the five-year period before the rendition of the final decree, notwithstanding the filing of the bill on March 8, 1944.

■ The brief in support of this insistence assumes that the holding of the lower court, as well as that here rendered, was to the effect that the respondent in no manner interfered in complainant's milling operations. In speaking of the question of interference, the decree from which this appeal was taken was making reference to complainant's claim for damages by reason of respondent's interference with his milling operations. The court stated in substance that the proof was too uncertain as to the ascertainment of any particular amount of damages. But there was no holding that there was no interference on complainant's part, and this court did not intend to so indicate in the opinion heretofore rendered. Indeed, the proof is to the contrary. Respondent had interfered with the milling operations and evidently either himself or through others placed signs on the premises against the trespassing or cutting of timber. Not only so, but we are persuaded that respondent was responsible for some few shots which were fired when complainant and one of his employes were on the premises. The respondent positively declined to carry out the contract though there was only the sum of two thousand dollars out of the fifteen thousand dollars remaining unpaid.

On numerous occasions complainant made effort to have the respondent execute a deed to the property, and we are persuaded that any such refusal was not rested upon any imperfections or mistakes in the language of the deed which was tendered. Complainant testifies to conversation with the respondent wherein the latter referred to an offer by another of twenty-seven thousand dollars for the timber he had seen on the property and that he would sign the deed if complainant would sell to this man and give him half the money. Complainant very naturally inquired: "What about my thirteen thousand dollars, I paid you?" Respondent replied: "That's mine." Complainant was asked the question: "You just couldn't get a deed from him?" He answered: "No sir." And respondent replied: "I ain't executed to you no deed; that ain't the hell of it, I am not going to do it." Complainant then tells about how the respondent stopped his men on different occasions, posted the land, when he and his men would go into the woods forbidding them to go in. A court proceeding was his only resort.

When the bill was filed respondent resisted by all means at his command any relief to be given complainant, including sale of the land for division, and insisting all along, both by allegations and proof, that his time for cutting the timber was two years and had expired.

■ The testimony seems to have been taken in February, 1946. From a careful study of this record the court is fully persuaded that respondent simply became dissatisfied with the trade and restless over the fact that his brother, this complainant, was evidently making more clear profit out of the transaction than was anticipated. The authorities cited by counsel for appellant are, in our opinion, not here applicable. The rule generally recognized (34 Am.J. 515; National Bank of Newberry v. Livingston, 164 S.C. 2, 161 S.E. 769; Halla v. Rogers, 9 Cir., 176 F. 709, 34 L.R.A., N.S., 120; 58 C.J. 1222) as applicable to this situation is found stated in Roberson v. Little, 200 Ala. 582, 76 So. 940, as follows: "That where the vendee's failure to remove timber during the time stipulated in his deed has been due to interference by the owner of the soil, his right to a reasonable time thereafter in which to remove will be declared and enforced by appropriate decree in equity." And as stated by the Wisconsin court in Peshtigo Lumber Co. v. Ellis, 122 Wis. 433, 100 N.W. 834, 835: "[Equity recognizes and enforces] the principle is that 'he who prevents a thing being done shall not avail himself of the non performance he has occasioned.'"

The decree of the lower court orders the sale of the land for division and a reference for the ascertainment of the amount and value of the timber, if any, still remaining on the lands of the specified dimensions as of March 12, 1942. The register is also directed to calculate the interest on the sum of two thousand dollars yet remaining due on the purchase price, and to deduct the same from the share of the complainant and add the same to the share

194

of the respondent on a division of the proceeds arising from a sale of the land. The register was also directed to ascertain the number and value of the trees, if any, cut by complainant during his timbering operations as less than the specified dimensions as of March 12, 1942. In the decree thus rendered the court assumes that is to be done which should be done and provides upon the coming in of the register's report an equitable solution of this litigation.

We have felt it appropriate to make this response in answer to the earnest insistence of counsel for appellant.

Entertaining the view, however, that our original opinion is correct, the application for rehearing will be overruled. It is so ordered.

Application overruled.

FOSTER, LAWSON, and STAKELY, JJ., concur.